JULIUS BALCUS *v.* STERLING EXPRESS COMPANY, INC.

*McLane, Davis & Carleton* (*Mr. Stanley M. Brown* orally), for the plaintiff.

*Walter M. Espovich* (of Massachusetts), and *J. Morton Rosenblum* (*Mr. Rosenblum* orally), for the defendant.

KENISON, J.   In the former transfer of this case (*Balcus* v. *Company* 93 N. H. 428), the factual situation was concisely described in part as follows:

"There was evidence from which the following facts might be found.   The defendant Lexington Shoe Company, having decided to move its factory from its old location on Silver Street in Manchester to a new location in the Amoskeag yard, made an arrangement with the Sterling Express Company by which the Sterling Express Company agreed to move the machinery from the old location to the new at a fixed price of $175.   In pursuance of this agreement the Sterling Express Company provided a truck and an experienced driver.   It was understood that the employees of the Lexington Shoe Company were to remove the machines from their old location and install them in the new, only the supervising of the work of loading them onto the truck of the Sterling Express Company, transporting them to the new location, a distance of three-quarters of a mile, and there supervising their unloading being undertaken by the express company.

"The plaintiff, an employee of the Lexington Shoe Company, was directed by his employer to ride in the truck from the new factory location back to the old for the purpose of assisting in loading some racks for transportation to the new factory. The truck was not designed for carrying passengers, and during the trip the plaintiff was forced to stand holding onto the side of the truck for support. He was injured by the sudden stopping of the truck in obedience to a traffic signal at an intersection of streets, findably through the negligence of the truck driver."

The testimony at the first trial of the plaintiff and the manager of the Lexington Shoe Company as well as the deposition of the truck driver was introduced at this trial and hence is identical. Although the parties called three additional witnesses, the evidence was substantially similar to that at the first trial (*cf. Smith* v. *Hooper*, 89 N. H. 452, 453), and the record retains its full measure of conflicting testimony concerning the relationship of the truck driver to the defendant and the Lexington Shoe Company.

Defendant moved for a nonsuit and directed verdict on the grounds that: (1) The evidence compelled a finding that the truck driver was not defendant's servant; (2) If he was, he did not act within the scope of his employment in transporting plaintiff; and (3) That the plaintiff was guilty of contributory negligence as a matter of law.

The first ground is foreclosed by *Balcus* v. *Company*, 93 N. H. 428, 429: "The managers of the two corporations gave conflicting testimony in regard to the terms of the agreement between them which raised an issue of fact for the jury with reference to the status of the driver." The jury could find that the truck driver was defendant's servant during the transportation of the machinery and at the time of plaintiff's injury. *Cf. Manock* v. *Company*, 86 N. H. 104.

Although the moving operation contemplated the transportation of machinery rather than "lumpers," both the defendant and the truck driver could reasonably expect that helpers would be required in the actual transportation of the machinery as well as at the places of loading and unloading. *Saunders* v. *Railroad*, 82 N. H. 476, 478. The presence of the plaintiff and the other employees in the truck at the time of this accident was incidental to the general moving operation and could reasonably have been anticipated by the defendant. In the absence of a rule by the defendant corporation prohibiting such a transportation of helpers reasonably known to the plaintiff (*Dearborn* v. *Fuller*, 79 N. H. 217), the driver acted within the scope of his employment. *Donovan* v. *Mills*, 90 N. H. 450, 452.

In this jurisdiction it is not contributory negligence as a matter of law to ride upon a running board (*Vandell* v. *Sanders*, 85 N. H. 143) nor on the floor of a cab of a truck with one foot on the running board. *Piateck* v. *Swindell*, 84 N. H. 402. Whether the plaintiff's act of standing and holding onto the side of the truck for support was negligent was properly submitted to the jury and a majority of the decisions so hold. Anno. 104 A. L. R. 312, 332; Note, 7 N. C. C. A. (ns) 458 and supplemental cases cited. Defendant relies on the minority rule stated in *Zavodnick* v. *Rose*, 297 Pa. 86, but that case is distinguishable since the court lays stress on the failure of the plaintiff to take the vacant seat beside the truck driver. Assuming that fact to be material, it would not control this case since the cab of the defendant's truck was full and the plaintiff had no such opportunity. Nor is plaintiff's conduct governed by the decision in *Rudolph* v. *Lavigne*, 92 N. H. 490, 492 where plaintiff stood on the running board of a car being towed without being able to steer it having made no attempt to do something for his safety after discovering the danger to which he was exposed. The motions for a nonsuit and a directed verdict were properly denied.

Defendant's manager, Slome, testified that he "sent a truck and a driver to Manchester and told him to report to" the manager of the Lexington Shoe Company. Plaintiff objected: "What he told the truck driver has nothing to do with this. It is self serving." The Court sustained the objection. No exception was taken to this ruling but its correctness is not doubtful. In argument plaintiff's counsel stated "not even Mr. Slome himself got on the stand and said he didn't have the right to control the driver." The excluded testimony as to what the defendant's manager Slome told the driver was not determinative of the issue as to who had control of the driver. The comment was at least an arguable inference that could be made relative to the understanding between the defendant and the Lexington Shoe Company as to the status of the driver. The argument was within the limits of legitimate advocacy. *Walker* v. *Railroad*, 71 N. H. 271. The failure to ask a material witness a question concerning the main issue involved may be a legitimate basis for the argument that the evidence, if elicited, would be unfavorable. *Woodman* v. *Peck*, 90 N. H. 292; *Baker* v. *Salvation Army*, 91 N. H. 1; 2 Wig. Ev. (3d *ed.*) ss. 285, 288.

A careful examination of the entire record disclosed no errors in a fair trial under proper instructions of the Court. In a decade of litigation on various aspects of responsibility for plaintiff's injuries in

this accident involving six hearings in two courts (*American &c. Co.* v. *Company*, 91 N. H. 466; *Balcus* v. *Company*, *supra*), the verdict of the jury would appear to be the final chapter therein and accordingly the order is

*Judgment on the verdict.*

All concurred.